IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ALEX THOMAS, Personal Representative of the Estate of Pamela Thomas, Deceased,

Plaintiff,

vs.

JOHN WEST, M.D.; and MCCOOK FAMILY MEDICINE, P.C.,

Defendants.

**7:25-CV-5000**

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO EXCLUDE PLAINTIFF'S EXPERT ROBERT L. PERKEL, M.D., AND SUMMARY JUDGMENT**

This medical malpractice action by plaintiff Alexander Thomas (Plaintiff) for the wrongful death of his mother, Pamela Thomas (the Decedent), arises from the alleged failure of the staff of a licensed medical clinic, defendant McCook Family Medicine, P.C. (McCook Clinic), including one of its doctors, defendant John West, M.D. (Dr. West), to notify the Decedent of critical lab results and send her to the nearest hospital. Filing 11 at 5. This case is now before the Court on Defendants' Motion to Exclude Plaintiff's Expert Robert L. Perkel, M.D. (Motion to Exclude Dr. Perkel), Filing 52, and subsequent Motion for Summary Judgment, Filing 55. For the reasons set out below, the Court grants Defendants' Motion to Exclude Dr. Perkel but denies Defendants' Motion for Summary Judgment.

## I. INTRODUCTION

### A. Factual Background

The Decedent visited McCook Clinic on May 8, 2023, for an anticoagulation medication check appointment with Dr. West. Filing 11 at 4 (¶ 20); Filing 56 at 1 (¶ 1); Filing 66 at 1 (¶ 1). At that visit, Dr. West ordered lab assessments, including a Completed Blood Count with platelets and automated differential count. Filing 11 at 4 (¶ 25). The results of the lab assessments received the same day were "notable for neutropenia." Filing 56 at 1 (¶ 2); Filing 66 at 1 (¶ 2).

On May 12, 2023, Decedent presented to Rawlings County Emergency Room with complaints of "shortness of breath, respiratory distress with chest tightness, lethargy, muscle aches." Filing 56 at 1 (¶ 3); Filing 66 at 1 (¶ 3). On May 13, 2023, Decedent was airlifted to Swedish Medical Center in Colorado for further treatment. Filing 56 at 1 (¶ 4); Filing 66 at 1 (¶ 4). Within a few hours of being admitted to Swedish Medical Center, Decedent passed away. Filing 56 at 1 (¶ 4); Filing 66 at 1 (¶ 4).

### B. Procedural Background

On January 30, 2025, Plaintiff filed this wrongful death and medical malpractice action against Dr. West and McCook Clinic (Defendants). Filing 1. Plaintiff filed an Amended Complaint on March 11, 2026. Filing 11. Plaintiff's Amended Complaint alleged that the treatment of the Decedent by Defendants deviated from the requisite standard of care and caused her injuries resulting in death. Filing 11 at 9–11. Defendants filed timely Answers. Filing 15; Filing 16.

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiff disclosed three specially retained experts: (1) an infectious disease physician, Matthew Hevey, MD; (2) a family medicine physician, Robert Perkel, MD (Dr. Perkel); and (3) a hematologist and oncologist, Khaleel Ashraf, MD. Filing 39; Filing 53-3 at 2–5. On May 20, 2026, Defendants filed both motions now before the court: the Motion to Exclude Dr. Perkel, Filing 52, and the Motion for Summary Judgment, Filing 55.

## II. LEGAL ANALYSIS

### A. The Court Grants Defendants' Motion to Exclude Dr. Perkel

*1. The Parties' Arguments*

In support of their Motion to Exclude Dr. Perkel, Defendants argue that Plaintiff failed to establish that Dr. Perkel sufficiently familiarized himself with the local standard of care as required

by Nebraska law. Filing 54 at 8. Defendants argue that Dr. Perkel cannot testify on the relevant standard of care because of the difference in his experience as a family practice physician in a large metropolitan hospital and failure to research and understand the standard of care required in a rural community. Filing 54 at 8, 17. Additionally, Defendants analogize Dr. Perkel's insufficient familiarity with the facts and reasoning to the facts and reasoning in the Nebraska Supreme Court's decisions in *Carson v. Steinke*, 989 N.W.2d 401 (Neb. 2023), and *Konsul v. Asensio*, 7 N.W.3d 619 (Neb. 2024), but distinguish this Court's recent decision in *Jensen v. Radiologic Center, Inc.*, No. 8:24CV129, 2026 WL 184555 (D. Neb. Jan. 23, 2026). Filing 54 at 9–17.

In response, Plaintiff argues that Dr. Perkel satisfies all requirements under Nebraska law to testify to the standard of care. Filing 64 at 1. Plaintiff argues that Nebraska's locality rule does not require familiarity in the form of licensure or previous practice in a specific locality. Filing 64 at 8–9. Additionally, Plaintiffs contend that Dr. Perkel has demonstrated sufficient familiarity with the "medically relevant factors" necessary to testify to the standard of care. Filing 64 at 10–13. In particular, Plaintiff emphasizes that Dr. Perkel has previously testified as a standard-of-care expert in Nebraska and that a national standard applies to the conduct at issue. Filing 64 at 14. Finally, Plaintiff argues that relevant caselaw, Defendants' expert, and Dr. Perkel's research demonstrate that the standard applicable here does not differ from the national standard. Filing 64 at 19–20. Therefore, Plaintiff asserts Dr. Perkel has established sufficient foundation to qualify as an expert and that any concerns with his opinions should be addressed in cross examination. Filing 64 at 21.

*2. Relevant Legal Standards for Expert Witness Testimony*

Federal Rule of Evidence 702 governs the admissibility of expert testimony in federal court. *See Bliv, Inc. v. Charter Oak Fire Ins. Co.*, 159 F.4th 539, 542 (8th Cir. 2025). An expert's testimony must meet three criteria: (1) the testimony "must be useful to the finder of fact in deciding the ultimate issue of fact"; (2) "the proposed witness must be qualified to assist the finder

of fact"; and (3) "the proposed evidence must be reliable or trustworthy in an evidentiary sense." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014) (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993).

In cases involving medical malpractice under Nebraska law, "expert testimony is . . . vital for determining whether the defendant breached the standard of care." *Jensen v. Radiologic Ctr., Inc.*, No. 8:24CV129, 2026 WL 2117460, at *5 (D. Neb. July 23, 2026) (citation omitted); *J.R.M.B. by & through Morgan-Baker v. Alegent Creighton Health Creighton Univ. Med. Ctr., LLC*, 21 N.W.3d 678, 689 (Neb. 2025) ("[T]he applicable standard of care is a vital element of a medical malpractice claim. But unlike ordinary negligence actions, in a medical malpractice case, expert testimony is also vital for determining whether the defendant breached the standard of care."). "Expert testimony offered to establish the standard of care in a medical malpractice case is admissible only if its proponent can demonstrate the expert's familiarity with the relevant standard of care in the defendant's community or a similar community." *Carson*, 989 N.W.2d at 412 (citing Neb. Rev. Stat. § 44-2810). "Where an expert's opinion is mere speculation or conjecture, it is irrelevant and cannot assist the trier of fact." *Konsul*, 7 N.W.3d at 632 (citing *Carson*, 989 N.W.2d 401).

In Nebraska, the applicable standard of care in medical malpractice cases is defined by the "locality rule" in Nebraska Revised Statute § 44-2810. *Slater v. Ichtertz*, 26 N.W.3d 504, 516 (Neb. 2025). Neb. Rev. Stat. § 44-2810 defines the standard of care as "the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities." Neb. Rev. Stat. § 44-2810. Courts evaluate conduct according to this standard by how "health care providers, in the

same community or similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances." Neb. Rev. Stat. § 44-2810. "[T]he 'similarity' of communities required by the 'locality rule' depends on 'medically relevant factors, including available facilities, personnel, equipment, and practices.'" *Jensen*, 2026 WL 184555, at *12 (quoting *Konsul*, 7 N.W.3d at 633).

*3. Dr. Perkel Insufficiently Established His Familiarity with the Local Standard of Care for McCook, Nebraska*

The Court recognizes that plaintiffs bear the burden of proving their experts' familiarity with the local standard of care. *Konsul*, 7 N.W.3d at 632–33 ("[T]he burden is on the proponent of the standard-of-care testimony to demonstrate that the expert is familiar with the customary practice among physicians in the defendant's community or a community that is similar in terms of . . . medically relevant factors." (citing *Carson*, 989 N.W.2d 401)). In order to testify about a national standard of care, Dr. Perkel needed to establish that the local standard reflects the national standard, that is, he must begin by proving his familiarity with the local standard. *See Konsul*, 7 N.W.3d at 633 ("[E]xpert testimony establishing a national standard of care is admissible if the expert can establish that the national standard of care does not differ in the defendant's community or a similar community." (citing *Carson*, 989 N.W.2d 401)).

The Court finds that Dr. Perkel did not sufficiently familiarize himself with the local standard of care to support the admissibility of his opinions as an expert. Recognizing Dr. Perkel is undoubtedly a competent doctor, the Court highlights from his deposition that Dr. Perkel has never been to McCook or practiced in Nebraska, Filing 53-5 at 7; did not consult any Nebraska family practice physicians, Filing 53-5 at 9; and recognized that "there might be sometimes a local difference," Filing 53-5 at 10. Dr. Perkel's assertion that the standard of care is often a national standard is not enough. *See Konsul*, 7 N.W.3d at 632 ("Evidence of an expert's experience and

education without any evidence of familiarity with the relevant or similar locality is insufficient to affirmatively demonstrate that the expert is competent to testify as to the standard of care." (citing *Carson*, 989 N.W.2d 401)). Similarly, his belief that "the local answer is the same as the national answer" or that the national standard is taught in medical school, Filing 53-5 at 10, does not evidence his familiarity with the specific local rule as demanded by Nebraska law. *See Konsul*, 7 N.W.3d at 632. Additionally, any attempt Dr. Perkel made at familiarizing himself with the McCook clinic was superficial. *See, e.g.*, *Carson*, 989 N.W.2d at 414–16 (finding statements of proposed expert describing similarities as "guessing" that the expert's current employment "would kind of be a mirror" of the community at issue failed to show the sufficient similarity or familiarity); *Konsul*, 7 N.W.3d at 634. The whole of Dr. Perkel's research amounted to "googl[ing] the McCook Clinic and the hospital there" to "get a sense of it." Filing 53-5 at 7–8. Therefore, the Court concludes that Dr. Perkel did not establish in his disclosures or deposition that he was sufficiently familiar with the local standard of care as required by Nebraska law to testify as an expert in this case.

*4. Summary*

The Court concludes that Plaintiff failed to establish his expert's sufficient familiarity with the local standard of care. *See Konsul*, 7 N.W.3d at 632–33. Nebraska's locality rule requires the Court to look for evidence that the expert is familiar with the local standard of care or that the local standard reflects the national standard. *See Jensen*, 2026 WL 184555, at *10–11. Dr. Perkel did not familiarize himself with the local standard of care. Therefore, the Court cannot admit Dr. Perkel's opinion as an expert on the standard of care. *See* Neb. Rev. Stat. § 44-2810; *Carson*, 989 N.W.2d at 412.

**B. The Court Denies Defendants' Motion for Summary Judgment**

*1. The Parties' Arguments*

Defendants' Motion for Summary Judgment is predicated on its Motion to Exclude Dr. Perkel. Filing 57. Defendants assert that the exclusion of Dr. Perkel as the standard-of-care expert means that Plaintiff failed to meet his burden of proof for establishing the prima facie elements of duty and breach on his medical malpractice claim. Filing 57 at 4. While Defendants later argue in their reply brief, Filing 70, that Plaintiff also failed to provide expert testimony establishing causation, the Court "refuse[s] to entertain [] new argument[s]" that are "assert[ed] for the first time in [a] reply brief." *Peterson v. Learfield Commc'ns, LLC*, 705 F. Supp. 3d 937, 955 (D. Neb. 2023) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1146 (8th Cir. 1999)). Therefore, the Court's consideration of Defendants' Motion for Summary Judgment is limited to whether expert testimony exists in the record to establish the standard of care and breach. *See* Filing 57.

In response, Plaintiff first reasserts his arguments defending Dr. Perkel's admissibility as an expert on the local standard of care for McCook, Nebraska. Filing 68 at 4–5. The Court has already rejected Plaintiff's position and determined it is appropriate to exclude Dr. Perkel above in § II.A.3. In the alternative, Plaintiff argues that the essential elements to his malpractice claim can be established through the cross-endorsed deposition of Defendants' expert, Dr. Donald Frey, M.D, Filing 63-4. Filing 68 at 5–9. Plaintiff asserts that the law requiring expert testimony to establish duty and breach "does not mandate that such expert testimony originate exclusively from a party's own designated experts." Filing 68 at 6. Therefore, Plaintiff argues that the record contains substantial evidence supporting Plaintiff's claim of medical malpractice, making summary judgment inappropriate. Filing 68 at 7, 9.

*2. Relevant Legal Standards*

Because jurisdiction is based on diversity of citizenship, this Court applies Nebraska substantive law and federal procedural rules. Filing 11 at 2 (¶ 9); *see Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

In a medical malpractice case, the substantive law of Nebraska requires that "a plaintiff must show (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm." *Thone v. Reg'l W. Med. Ctr.*, 745 N.W.2d 898, 903 (Neb. 2008). "Except in circumstances not applicable here, expert testimony is required on each element." *Carson*, 989 N.W.2d at 418; *Lombardo v. Sedlacek*, 908 N.W.2d 630, 644 (Neb. 2018) (requiring expert testimony to establish the applicable standard of care and causation of injury); *J.R.M.B. by & through Morgan-Baker*, 21 N.W.3d at 689 (requiring expert testimony to establish breach or deviation from the applicable standard of care).

According to Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Maser v. City of Coralville, Iowa*, 139 F.4th 1004, 1008 (8th Cir. 2025) (quoting *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005)).

In federal court, "a movant will be entitled to summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). To properly support its motion for summary judgment, the movant "can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough

evidence of an essential element of its claim to ultimately carry its burden of persuasion at trial." *Bedford*, 880 F.3d at 996 (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)).

Federal law also mandates that once the moving party satisfies the initial burden of negating an essential element or demonstrating a lack of evidence to establish an element,

> [T]he nonmoving party 'must respond by submitting evidentiary materials' of specific facts showing the presence of a genuine issue for trial. The nonmoving party must do more than raise some metaphysical doubt about the material facts, and cannot rest on mere denials or allegations. The nonmoving party must instead present enough evidence that a jury could reasonably find in his favor.

*Bedford*, 880 F.3d at 997 (first quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011); and then citing *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)); *see also* Fed. R. Civ. P. 56(c)(1) (providing that the party "asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record"). The Court "does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Walz v. Randall*, 2 F.4th 1091, 1099 (8th Cir. 2021) (quoting *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008)). Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (internal quotation marks omitted) (quoting *Ricci v. DeStafano*, 557 U.S. 557, 586 (2009)). Otherwise, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

*3. Plaintiff Can Rely on Dr. Frey to Defeat Defendants' Summary Judgment Claim*

On April 23, 2026, Plaintiff deposed Defendants' expert, Dr. Donald Frey. Filing 63-4. Of particular relevance to the issue of summary judgment, Dr. Frey answered questions related to the local standard of care for McCook, Nebraska, and breach of that standard. *See* Filing 63-4 at 9–10, 14–15. Dr. Frey is board-certified practitioner in family medicine from Nebraska. Filing 63-4

at 4, Dr. Frey demonstrated particularized knowledge of McCook, Nebraska, including its available medical resources and limitations. Filing 63-4 at 8–10. Dr. Frey also testified that "[i]f Dr. West had information that [the Decedent] had this remarkably low ANC, . . . the standard here would be that he would inform [the Decedent] of that. . . . [T]hat would have to be done to meet the standard of care." Filing 63-4 at 14; *see also* Filing 63-4 at 22 ("Again, [my] supposition is [Dr. West] would have done what a reasonable primary care provider would have done in the case of a patient with the knowledge and experience of [the Decedent], and that is he informed her of the findings, and . . . that was a requirement of the standard of care."). Following the deposition, Plaintiff cross-endorsed Dr. Frey pursuant to Federal Rule of Civil Procedure 26(a)(2).[1] Filing 60.

The Court concludes that Dr. Frey "present[ed] enough evidence that a jury could reasonably find in his favor" regarding the elements of standard of care and breach. *Bedford*, 880 F.3d at 996–97 ("In other words, if the nonmoving party must prove *X* to prevail, the moving party at summary judgment can either produce evidence that *X* is not so or point out that the nonmoving party lacks the evidence to prove *X*."). Dr. Frey's deposition qualifies as materials in the record available to show duty and breach such that a reasonable jury could find for Plaintiff. *See Carson*, 989 N.W.2d at 418; *Bedford*, 880 F.3d at 996–97; *cf. Wagner v. Pope*, 531 N.W.2d 234, 237 (Neb. 1995) (concluding that a deposition obtained by the plaintiff of the defendant's expert witness presented the standard of care in response to a similar summary judgment motion). Specifically, Dr. Frey testified that the applicable standard "would be that he would inform [the Decedent]" of the lab results. Filing 63-4 at 14. Additionally, Dr. Frey testified that "not informing someone of severe neutropenia and severe low ANC . . . would not be upholding the standard of care." Filing

[1] Dr. Frey is Defendants' standard-of-care expert. Filing 71-2 at 17 ("In sum, I will testify, based on my review of the medical records, deposition testimony, and case documents, Dr. West and the McCook Clinic met the standard of care."). Defendants neither dispute Plaintiff's cross-endorsement of Dr. Frey nor whether Dr. Frey is qualified to testify regarding the appropriate standard of care. *See* Filing 69.

63-4 at 14. Therefore, the Court is satisfied that Plaintiff properly submitted evidentiary materials of expert testimony to show the presence of a genuine issue for trial. *Bedford*, 880 F.3d at 997; *Torgerson*, 643 F.3d at 1042.

*4. Summary*

The Court concludes that the record has sufficient expert testimony regarding the elements of duty and breach for a medical malpractice claim. Therefore, the Court denies Defendants' Motion for Summary Judgment.

## III. CONCLUSION

Upon the foregoing,

IT IS SO ORDERED that

1. Defendants' Motion to Exclude Dr. Perkel, Filing 52, is granted.
2. Defendants' Motion for Summary Judgment, Filing 55, is denied.

Dated this 29th day of September, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge